IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMMANUEL MELENDEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>TOM DART,<br><br>    Defendant. | No. 18-cv-05652<br><br>Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Emmanuel Melendez alleges that, when he was detained at Cook County Jail, his cell was infested with cockroaches, and he also received two serious spider bites. Plaintiff sued Defendant Tom Dart, the Sheriff of Cook County, under 42 U.S.C. § 1983, arguing that Plaintiff's conditions of confinement violated the Eighth Amendment. Defendant now moves for summary judgment.[1] (Dkt. 71.)

For the reasons that follow, the Court holds both that Defendant did not act with deliberate indifference and that Plaintiff did not suffer sufficiently serious

---

[1] As noted on the docket (Dkt. 96), the parties' initial briefing was imprecise as to whether Plaintiff's claims were brought as a pretrial or postconviction detainee. That distinction matters because pretrial detainees "may assert a conditions-of-confinement claim under the Fourteenth Amendment's Due Process Clause," which is an objective inquiry, while prisoner suits are rooted in the Eighth Amendment's prohibition on cruel and unusual punishment, which has "both a subjective and an objective component." *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019). After the Court invited supplemental briefing from the parties on that issue (Dkt. 96), both sides agreed that Plaintiff was a postconviction detainee and that Plaintiff's suit is rooted in the Eighth Amendment. (Dkt. 100.) Accordingly, the analysis below proceeds under the Eighth Amendment rubric.

physical harm from the infestation. Defendant is therefore entitled to summary judgment.

I.  **BACKGROUND**

Between August 8, 2017 and October 5, 2018, Plaintiff was incarcerated at Cook County Jail. (Dkt. 78-1 ¶ 2.) Defendant was the Sheriff of Cook County during Plaintiff's entire period of incarceration. (*Id.* ¶ 3.) Plaintiff was initially housed in Division 2 of the jail, but was transferred to Division 10, Tier 4D on January 24, 2018. (*Id.* ¶¶ 9–10.) Except for a single day on August 22, 2018, Plaintiff remained housed in Division 10, Tier 4D for his incarceration at the jail. (*Id.* ¶ 11.)

Upon entering Cook County Jail, detainees are provided a copy of the Inmate Handbook (*Id.* ¶ 23; Dkt. 72-11.) The Inmate Handbook informs detainees that they are responsible for maintaining the cleanliness of their cell. (Dkt. 78-1 ¶ 23; Dkt. 72-11 at 15.) To that end, detainees are provided with a sanitation kit upon entry, and are advised that additional cleaning materials are available upon request by filing an Inmate Request Form or informing the living unit officer for their tier. (Dkt. 78-1 ¶¶ 20–21, 26.) Detainees are also told that they are prohibited from cooking or heating up food in their cells and that failing to keep a clean cell can attract bugs and rodents. (*Id.* ¶¶ 24–25.) Plaintiff acknowledged that he received a copy of the Inmate Handbook when he entered Cook County Jail. (*Id.* ¶ 27.)

On February 11, 2018, while residing in Division 10, Tier 4D, Plaintiff submitted a grievance complaining about roaches in his cell, the tier dayroom, and the showers. (Dkt. 78-1 ¶ 12; Dkt. 84 ¶ 7.) Plaintiff also complained orally to

2

Superintendent Walsh, Division 10's Superintendent, on two occasions concerning his insect infestation in his cell.² (Dkt. 84 ¶ 8.) From the time he submitted the grievance on February 11, 2018, until his incarceration at Cook County Jail ended, an exterminator came and sprayed down Plaintiff's tier on many (more than 15) occasions. (Dkt. 78-1 ¶¶ 14, 51–67; Dkt. 84 ¶¶ 11–12.) Tier workers, comprised of fellow detainees, also spent roughly an hour each day cleaning the common areas in Plaintiff's tier, including sweeping, mopping, and wiping down tables and benches. (Dkt. 78-1 ¶¶ 35–36.) The shower areas within the tier were power-washed and cleaned at least once per month. (*See id.* ¶¶ 37–67; Dkt. 84 ¶ 12.) Plaintiff also received cleaning materials every Saturday. (Dkt. 84 ¶ 3.) Plaintiff received additional cleaning materials on one occasion after he explained to Superintendent Walsh that he had a roach problem and had received two spider bites that caused boils and scarring. (Dkt. 78-1 ¶¶ 28–29; Dkt. 84 ¶ 3; Dkt. 72-1 at 24–26.) Plaintiff's grievance was ultimately denied.³ (Dkt. 84 ¶ 7.)

---

² In an affidavit, Plaintiff asserts that he complained to Superintendent Walsh when he saw him on the tier. (Dkt 84 ¶ 7.) Defendant disputes this assertion, however, because Plaintiff previously testified at his deposition that he spoke to Superintendent Walsh when he was going to the recreation yard or the barbershop (but not on his tier). (Dkt. 85 at 5.) Because the precise location of these conversations is not material, the Court need not resolve this dispute.

³ Plaintiff argues that many of the assertions contained within Defendant's statement of facts should be disregarded because they rely on "fifteen documents" lacking foundation from an affidavit or certificate under 28 U.S.C. § 1746. (Dkt. 78 at 6–7.) On summary judgment, a court "may consider any evidence that would be admissible at trial." *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). This evidence "need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content." *Id.* Defendant thus does "not need to lay foundation for exhibits offered in support of summary judgment as long as the exhibits are capable of being presented in an admissible form at trial, such as by having a competent witness testify to lay a foundation for the document." *United States ex rel. Youn v. Sklar*, 273 F. Supp. 3d 889, 899

Acting *pro se*, Plaintiff brought this suit against Defendant. (Dkt. 1.) Among other things, Plaintiff alleges that, while housed in Division 10, Tier 4D, he lived with an extensive roach infestation and received two spider bites that resulted in boils and scarring. (Dkt. 1; Dkt. 84 ¶ 2.) Judge John Z. Lee, who was previously assigned this case, reviewed the *pro se* prisoner complaint as required by 28 U.S.C. § 1915A. Judge Lee permitted Plaintiff to proceed on his Fourteenth Amendment conditions of confinement claim under 42 U.S.C. § 1983 "based on the alleged persistent roach infestation," but all remaining claims were dismissed. (Dkt. 9 at 4.) Defendant now moves for summary judgment on this remaining claim. (Dkt. 71.)

## II. LEGAL STANDARD

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

---

(N.D. Ill. 2017). Plaintiff has not argued that the content of the documents would be inadmissible at trial. Defendant has also cured any supposed deficiency by submitting a certification under 28 U.S.C. § 1746 from Yolanda Debro, Superintendent for Sanitation, that lays foundation for the documents. *See Holman v. Revere Elec. Supply Co.*, 2005 WL 638085, at *2 (N.D. Ill. Mar. 15, 2005).

4

will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the "put up or shut up moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable to Plaintiff as the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### III. DISCUSSION

#### A. Conditions of Confinement Claim.

Under the Eighth Amendment, which has been incorporated against the states through the Fourteenth Amendment, prisoners are protected from "cruel and unusual punishment." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). State prisoners under Section 1983 may thus "bring suit against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under color of state law." *Id.* Prisoners must be "housed under 'humane conditions' and provided with 'adequate food, clothing, shelter, and medical care.'" *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To show an Eighth Amendment violation, a plaintiff must prove both "(1) that he suffered a sufficiently serious deprivation[;] and (2) that [the defendant] acted with deliberate indifference to his conditions of confinement." *Id.* (cleaned up); *see also Chandler v. Neal*, No. 23-2400, 2024 WL 1756346, at *2 (7th Cir. Apr. 24, 2024) (nonprecedential disposition).

5

According to Defendant, no reasonable juror could find, based on the record evidence, that Plaintiff has proven either element.

> **i. Defendant Was Not Deliberately Indifferent to the Infestation.**

A prison official acts with deliberate indifference towards a prisoner's conditions of confinement when they act with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This is a subjective test: the official must "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Sain*, 512 F.3d at 894 (quoting *Farmer*, 511 U.S. at 837). Accordingly, deliberate indifference "requires a showing of more than mere or gross negligence, but less than purposeful infliction of harm." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *see also Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (deliberate indifference "reflects a mental state somewhere between the culpability poles of negligence and purpose[] and is thus properly equated with reckless disregard"). A plaintiff must show that the defendant's response to their conditions was "so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

Defendant first contends that the routine extermination treatments of Plaintiff's living tier preclude a finding of deliberate indifference. (Dkt. 71 at 6–7.) In *Sain*, the Seventh Circuit held that "the policy of frequent exterminations in this case, made monthly and in response to plaintiff's requests, certainly cannot support a claim of deliberate indifference" with regards to the plaintiff's pest-infestation complaints.

6

512 F.3d at 895 (cleaned up); *see also Moore v. Monahan*, 2009 WL 310963, at \*7 (N.D. Ill. Feb. 9, 2009) (defendants did not behave with deliberate indifference because "an extermination service sprayed for pests at least twice a month"); *but see Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (allegation that the "prison was sprayed [only] twice by pest control . . . in sixteen months" sufficient to state Eight Amendment claim). After Plaintiff filed his grievance regarding the roach infestation, his living tier was sprayed by an exterminator over 15 times in eight months, including one month where the tier was treated five times. (Dkt. 78-1 ¶¶ 14, 51–67; Dkt. 84 ¶¶ 11–12.) This active and frequent treatment against pests precludes any reasonable jury finding that Defendant was deliberately indifferent to Plaintiff's roach infestation. *Sain*, 512 F.3d at 895; *see also Moore*, 2009 WL 310963, at \*7; *Munson v. Kink*, No. 21-2738, 2022 WL 17844068, at \*2 (7th Cir. Dec. 22, 2022).

In opposing summary judgment, Plaintiff points out that the exterminator never sprayed insect and pest control substances *within* his cell. (Dkt. 84 ¶ 11.) As the record shows, however, the exterminator *attempted* to spray Plaintiff's cell on February 21, 2018 but could not do so because the cell was occupied. (Dkt. 78-1 ¶ 52; Dkt 72-9 at 12.) In any event, the failure to spray specifically within Plaintiff's cell, in view of the frequent treatments of Plaintiff's living tier, does not establish that Defendant recklessly disregarded the infestation; at most, it shows that Defendant genuinely attempted to abate the infestation but was unsuccessful. *See Barbosa v. McCann*, 2012 WL 4471218, (N.D. Ill. Sept. 26, 2012) (defendant was not deliberately indifferent because, although exterminators failed to spray inside the cell, they

7

repeatedly "sprayed in several locations throughout the prison and made contact with the outside of Plaintiff's own cell").

In addition to extermination, the common areas of the living tier were cleaned daily, and the showers were power washed at least once per month. Plaintiff was also provided with cleaning supplies once per week (and one additional time upon request). This frequency and abundance of hygienic efforts—regular cleaning of the living tier and access by Plaintiff to cleaning supplies—further negates a finding of deliberate indifference. *Cf. Gray v. Hardy*, 826 F.3d 1000, 1005–06 (7th Cir. 2016) (deliberate indifference present because prisoner's "towel (singular) was changed only once every eight months" and "he was denied access to adequate cleaning supplies").

Plaintiff complains that provision of cleaning supplies once per week is insufficient, and that he was "rarely given liquid cleaning soup" and had to "typically use[] bar soap." (Dkt. 84 ¶¶ 3, 5–6.) Jails, however, "do not have to duplicate the amenities of . . . hotels." *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988). Plaintiff cites to no cases (and this Court is unaware of any) that require a jail to provide cell cleaning supplies more than once per week in the Plaintiff's preferred form. (*See* Dkt. 78 at 7.) Plaintiff also complains that he was not provided a sanitation kit when he entered the jail. (Dkt. 84 ¶ 5.) But because Plaintiff was later given cleaning supplies on a weekly basis, accepting this allegation as true does not alter the analysis. Any initial failure to provide a sanitation kit is inconsequential.

Defendant finally argues that Plaintiff submitted only one grievance in February 2018 about roaches in his cell but did not thereafter submit another

8

grievance, which weighs against finding that Defendant was aware of the persistent roach infestation. (Dkt. 71 at 6–7.) Plaintiff disputes this fact. In an affidavit attached to his summary judgment response brief, Plaintiff says that he attempted to file a second grievance but was told by a corrections officer that he could not do so because he had already filed a grievance regarding the infestation. (Dkt. 84 ¶ 9.) Defendant responds that Plaintiff's assertion in his affidavit should be disregarded because it conflicts with his earlier deposition testimony. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018) (a party may not "create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony").

During his deposition, Plaintiff was questioned about the substance of every grievance he filed, which included only one grievance about the roach infestation. (Dkt. 72-1 at 17–20.) Plaintiff then answered "no" when he was asked whether he recalled "filing any other grievances" related to his conditions of confinement. (*Id.* at 20.) Taken literally, the affidavit is not inconsistent with the deposition testimony because Plaintiff did not *file* the grievance: he only attempted to do so but was prevented by the corrections officer. In any event, because of the frequent exterminations, Plaintiff cannot show that Defendant "intentionally or recklessly disregarded his needs" even when the Court assumes that Plaintiff filed a second grievance.[4] *Hayes*, 546 F.3d at 524.

---

[4] Defendant also contends that Plaintiff contributed to the infestation by leaving food out in his cell and cooking inside his cell at least once. (Dkt. 71 at 12.) Plaintiff maintains, however, that because he never left exposed food out in his cell for more than ninety minutes at a time, never left food out overnight, and would cover plates or bowls containing food from time to time, he did not cause the infestation. (Dkt. 84 ¶ 4.) The Inmate Handbook prohibits cooking but does not prohibit having food in the cell. (Dkt. 78-1 ¶ 24.) Accordingly, taking all

9

### ii. Plaintiff's Two Spider Bites Were Not a Sufficiently Serious Deprivation.

A plaintiff's conditions of confinement must cause "extreme deprivations" to be actionable. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Because "routine discomfort" is "part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (cleaned up). As the Seventh Circuit has held, a "prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation." *Sain*, 512 F.3d at 894. Courts must consider "how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have[,] . . . and how long the infestation continues." *Thomas v. Illinois*, 697 F.3d 612, 614–15 (7th Cir. 2012).

In *Antonelli*, the Seventh Circuit provided an example of a prolonged, significant infestation capable of sustaining an Eighth Amendment claim. In that case, the plaintiff alleged that, for sixteen months, cockroaches "were everywhere, crawling on his body (along with mice) and constantly awakening him," which caused "significant physical harm." 81 F.3d at 1431 (cleaned up). Other judges in this district have also held that an infestation is sufficiently serious as in *Antonelli* when the

---

inferences in favor of Plaintiff, the Court does not find that Plaintiff's conduct meaningfully contributed to the infestation. The frequency of exterminations, however, still mandates the finding that Defendant was not deliberately indifferent.

10

plaintiff alleges that his cell was "virtually overrun with pests," including "cockroaches, spiders, earwigs, and mice," and that the plaintiff suffered from insomnia and had to sleep with tissue in his ears after witnessing "his cellmate having to have an insect removed from his ear canal." *Lyons v. Vergera*, 2016 WL 4493455, at *8 (N.D. Ill. Aug. 26, 2016); *see also Davis v. Williams*, 216 F. Supp. 3d 900, 908 (N.D. Ill. 2016) (plaintiff's allegations of a ten-year infestation and that "two cockroaches were physically removed from his right ear canal" were sufficiently serious deprivations); *Russell v. Montes*, No. 19-CV-6688, 2025 WL 257294, at *3 (N.D. Ill. Jan. 21, 2025) (cockroach lodged inside ear was an objectively serious medical condition).

Conversely, the Seventh Circuit in *Sain* described an infestation that was insufficient to establish a constitutional violation. In *Sain*, the plaintiff alleged that he "often saw several cockroaches crawling in his cell" during his six-year incarceration and "was bitten by a cockroach twice during his time in detention." 512 F.3d at 894. Although the infestation was "certainly unpleasant," it was not "objectively serious enough to establish a constitutional violation." *Id.* And in *Moore*, the plaintiff's allegation that he experienced sleeplessness for five and a half months because he stayed up at night to kill insects to prevent them from stinging him did "not come close to reaching the *Antonelli* level of pest infestation." *Moore*, 2009 WL 310963, at *7. *Moore*'s plaintiff "was not stung or bitten by the insects" and thus did not suffer "significant physical harm." *Id.* (quoting *Sain*, 512 F.3d at 894).

Plaintiff contends that he suffered a sufficiently serious physical injury

11

because he received two spider bites that caused boils, scarring, and minimal cellulitis.[5] (Dkt. 78 at 9.) Defendant contends that two bug bites, without more, do not equate to a sufficiently serious physical injury. (Dkt. 71 at 11–12.) With due respect to Plaintiff's argument, the Court agrees with Defendant. *Sain* held that two cockroach bites throughout a six-year infestation was insufficient to sustain a constitutional violation. 512 F.3d at 894. Plaintiff here endured an infestation of much shorter length (about eight months) and sustained just two spider bites. Plaintiff's complaint and statement of additional facts is, as well, short on details regarding the extent of the cockroach infestation. Plaintiff states that the infestation was "extensive," but he does not describe the number and frequency of the cockroaches or allege that the cockroaches crawled on his body and property. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (alleging "the mere presence of a laundry lists of pests" without also alleging "how extensive the infestations are" is insufficient to state constitutional claim); (Dkt. 1; Dkt. 78-2.) Again, it is beyond doubt that the presence of cockroaches and enduring two spider bites was unpleasant for Plaintiff. These conditions, however, do not approach the infestation in *Antonelli*, where cockroaches constantly crawled on the plaintiff, or the infestations in *Lyons*

---

[5] Defendant argues that the record does not support Plaintiff's contention that the boils were caused by spider bites. (Dkt. 85 at 5.) In his statement of additional facts, Plaintiff asserts that a "medical examination on May 17, 2018 confirmed possible spider bites on Plaintiff's left flank / back and left forearm." (Dkt. 84 ¶ 13.) Plaintiff cites to documents "P58" and "P48–P50" to support this diagnosis. These documents, however, do not exist in the record. Defendant is thus correct that there is no support in the record, beyond Plaintiff's speculation, that the boils were caused by spider bites. But even if the boils were caused by spider bites, Plaintiff still did not suffer a deprivation serious enough to permit this case to go forward.

and *Davis,* where insects crawled inside the prisoners' ears.[6]

In sum, because Defendant was not deliberately indifferent to the infestation and the Plaintiff did not suffer a sufficiently serious physical harm from the infestation, Defendant is entitled to summary judgment.[7]

## IV.  CONCLUSION

Defendant's motion for summary judgment (Dkt. 71) is granted.

SO ORDERED in No. 18-cv-05652.

Date: August 1, 2025

JOHN F. KNESS
United States District Judge

---

[6] Although the parties agree that Plaintiff's claims are brought as a post-conviction detainee under the Eighth Amendment, *supra* note 1, there is some ambiguity in the record because Plaintiff arrived at the Cook County Jail as a pretrial detainee and was subsequently convicted. (*See* Dkt. 96.) To the extent that Plaintiff's claims are properly rooted in the Fourteenth Amendment, they too fail at the summary judgment stage because Fourteenth Amendment conditions-of-confinement claims "contain only an objective component," while Eighth Amendment claims contain "an additional 'subjective' element, requiring proof of deliberate indifference." *Hardeman v. Cnty. of Lake*, No. 17 CV 8729, 2024 WL 2019944, at *4 (N.D. Ill. May 6, 2024). For the reasons described in this section, the conditions in question were not sufficiently "objectively serious" to survive summary judgment under the Fourteenth Amendment standard. *See id.* at *4–5 (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

[7] Defendant is also entitled to summary judgment based on qualified immunity. (Dkt. 71 at 13–15.) Qualified immunity shields public officials like Defendant "from liability for civil damages, provided that the illegality of the official's conduct was not clearly established at the time he acted." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). In *Sain*, the Seventh Circuit held that frequent exterminations and two cockroach bites does not establish an Eighth Amendment violation. Accordingly, Defendant's conduct, which involved frequent exterminations and Plaintiff receiving two spider bites, did not violate a clearly established Eighth Amendment right.

13